UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SINAI FLORES SAUCEDO, as
Administrator of the Estate of Oliverio
Saucedo, Deceased,

    Plaintiff,

    v.

CITY OF CHICAGO, JOSE GOMEZ,
ERACLIO RUIZ, AND PATRICK
GOLDEN,

    Defendants.

No. 11 C 5868
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Sinai Flores Saucedo ("Plaintiff"), the administrator of the estate of decedent Oliverio Saucedo ("Saucedo"), brings suit against Defendants Chicago Police Department Detectives Jose Gomez ("Gomez"), Eraclio Ruiz ("Ruiz"), and Patrick Golden ("Golden") (referred to collectively at times as "Defendant Detectives") and the City of Chicago ("the City") for violating Saucedo's Fourth Amendment rights under 42 U.S.C. § 1983 and state law claims under the Illinois Wrongful Death Act and Illinois Survival Act. Defendants now move for summary judgment on all counts under Fed. R. Civ. P. 56. For the following reasons, Defendants' motions are granted as to Counts I, II, and III in its entirety, and Count IV in part.

### I. STATEMENT OF FACTS

**1. Saucedo's Arrest, Custody, and Death**

On April 16, 2010, Saucedo was arrested by the Chicago Police Department ("CPD") as a suspect in the fatal shooting of D'Anthony Lopez. Detective Gomez was assigned to lead the Lopez homicide investigation, and Detectives Ruiz and Golden were assigned to assist Gomez.

1

Saucedo was taken into custody and was administered a pat-down search, which did not reveal any harmful items. Saucedo was handcuffed and turned over to Ruiz and Golden, and Ruiz performed a routine custodial search of Saucedo's person that did not reveal any contraband or hidden items. Saucedo was wearing gym shorts, which Ruiz lifted to reveal only a pair of briefs underneath.

Ruiz and Golden then transported Saucedo to the Detective Division of Area 4 headquarters, and Saucedo was briefly placed in Interview Room D at 6:35 a.m. Ruiz removed Saucedo's handcuffs and performed another search of Saucedo's person, including Saucedo's waistband, that did not reveal any illegal or potentially harmful items. At 6:55 a.m., Ruiz and Golden moved Saucedo into Interview Room A, which contained a windowless door, a moveable chair, and a camouflaged camera that records video as an Electronic Recording Image ("ERI"). Saucedo was never restrained inside either interview room.

Over the next three hours, Saucedo participated in two physical line-ups, to and from which Saucedo was escorted by Golden. Saucedo was not searched when leaving and re-entering Interview Room A. The line-ups concluded at 10:11 a.m., at which point Gomez informed the Cook County's State's Attorney's Office of Felony Review ("Felony Review") that he would be charging Saucedo with first-degree murder. Pursuant to Felony Review policy, Assistant State's Attorney Brad Dickey ("ASA Dickey") arrived at Area 4 headquarters to review, log, and burn the ERI videotape of Interview Room A before approving contemplated felony charges.

At 10:57 a.m., Gomez entered Interview Room A, informed Saucedo that several witnesses identified him as the shooter, and read Saucedo his *Miranda* rights. Saucedo requested a pen and paper to write a letter to his mother, which Gomez refused. Gomez exited the room at 11:02 a.m. At approximately 12:06 p.m., ASA Dickey informed Gomez that he had observed

2

Saucedo secrete a string from his pants and conceal it on his person on the ERI video. Gomez immediately walked to Interview Room A where he discovered Saucedo hanging from the top inner hinge of the door by his waistband drawstring. Golden responded to Gomez's call for help and together they cut the drawstring and released Saucedo. Saucedo was unconscious, unresponsive, and without respiration. Resuscitation attempts were unsuccessful, and Saucedo was pronounced dead. An investigation concluded that Saucedo's death was a non-criminal death by suicide.

**2. Saucedo's Suicide**

While Saucedo was held in Interview Room A, he removed a string from the waistband of his shorts using his teeth. At various points, Saucedo concealed the string underneath his clothing on different parts of his body, tested the string on the top hinge of the door, and looked underneath the door several times. At 10:47 a.m., Saucedo removed the string from his upper left arm, secured the string over the top hinge, pulled the chair to the corner of the room and then wrapped the string around his head. He then removed the string from around his head, pushed the chair away from the corner of the door, concealed the string on his upper left arm underneath his shirt, and knocked loudly on the door. Gomez entered the room at 10:57 a.m.

After Gomez exited the room at 11:02 a.m., Saucedo immediately removed the string from his upper left arm and walked to the door. Saucedo looked underneath the door, pushed the chair to the door, climbed the chair, and secured the string to the top hinge of the door. At 11:04 a.m., Saucedo hanged himself with the string by kicking the chair away. Saucedo lost consciousness within ten to fifteen seconds of hanging himself and was clinically dead within three to five minutes.

### 3. Saucedo's Suicidal History

Saucedo had no prior history of depression nor had he ever sought or received medical treatment for depression or sadness. While at Area 4 headquarters, Saucedo never indicated to any officer that he had either a history of mental illness or had previously attempted suicide. While he was alive, Saucedo never expressed feelings of sadness or depression, a desire to harm himself, or suicidal thoughts to any of his family members. To his family's knowledge, Saucedo was neither born with any birth defects or mental disabilities nor suffering from any physical or mental medical conditions at the time of his arrest. Saucedo's family also did not know Saucedo to have ever attempted to kill himself and were never told about any suicide attempt. His sister, Maria, and his brother, Carlos, who were both present at Area 4 headquarters, neither told Defendant Detectives that Saucedo had expressed any desire to harm himself nor did they make Defendant Detectives aware of any mental illness or prior suicidal tendencies. Saucedo never indicated that he wanted to harm himself or expressed suicidal thoughts during his interactions with Defendant Detectives.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir.2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir.2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-moving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

### III. DISCUSSION

**A. Count I: § 1983 (City of Chicago)**

Section 1983 provides that any person who, under the color of law, causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Under the *Monell* doctrine, a municipality can be liable under § 1983 for a constitutional violation by its employee that was caused by: (1) an official policy, (2) a widespread practice or custom, or (3) an official with final policy-making authority. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir.2010)(citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–41, 56 L.Ed.2d 611 (1978)); *Hahn v. Walsh*, 762 F.3d 617, 638 (7th Cir.2014). A municipality can also be liable for an unconstitutional act caused by its failure to create a policy "where rules or regulations are required to remedy a potentially dangerous practice." *Thomas*, 604 F.3d at 303.

To demonstrate that a municipality is liable for a widespread, harmful custom, practice, or policy (or lack thereof), a plaintiff must show that the municipality is "deliberately indifferent as to [its] known or obvious consequences." *Thomas*, 604 F.3d at 303. To establish a municipality's deliberate indifference to such consequences, a plaintiff must present proof of a series of constitutional violations—as well as specific facts regarding the violations—rather than isolated acts of misconduct. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir.2003). There is no bright-line rule for how frequently conduct must occur, but a plaintiff must establish a "series of unconstitutional acts from which it may be inferred that the [City] knew [CPD] officers were violating the constitutional rights of [CPD] inmates and did nothing." *Hahn* 762 F.3d at 637; *see also Holmes v. Sheahan*, 930 F.2d 1196, 1202 n.4 (7th Cir.1991); *Ransberry v. Dart*, 2014 WL 1052938, at \*6 (N.D. Ill. Mar. 19, 2014).

Plaintiff brings suit against the City under § 1983, alleging that the City violated Saucedo's Fourth Amendment rights, not through an express policy or a deliberate act of a final policymaker, but because it maintained deficient policies that resulted in harmful, widespread customs and practices. The single incident of Saucedo's death by suicide is not, itself, sufficient to establish a widespread practice of a deprivation of inmates' constitutional rights. *See Othman v. City of Chicago*, 2014 WL 6566357, at \*6 (N.D. Ill. Nov. 20, 2014). To bolster its claim, Plaintiff additionally offers statistical evidence that eighteen incarcerated persons committed suicide while in the City's custody over the last twenty years and that there is generally a high rate of suicide amongst pretrial detainees. Plaintiff has not, however, provided any specific facts as to how these suicides are related to CPD employees' training or their conduct regarding monitoring, searching, or restraining detainees, or providing harm-free conditions of confinement. Statistics without any evidence that the failure to maintain a policy contributed to

6

the suicides are insufficient to support a *Monell* claim. *Richardson v. City of Chicago, Ill.*, 2011 WL 862249, at *13-14 (N.D. Ill. Mar. 10, 2011)(quoting *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985)).

Though the record is silent as to the details of these suicides and whether they involved constitutional violations, Plaintiff argues that it is the silence that creates a question of material fact because it fails to show that the suicides occurred *absent* § 1983 liability. Plaintiff's reliance on silence is not "definite, competent" evidence sufficient to create a genuine issue for trial regarding whether these eighteen suicides were related to CPD's lack of sufficient policies. Mere evidence of statistics and the incident at hand does not establish that the City was deliberately indifferent to a series of constitutional violations; summary judgment is granted in its entirety as to Count I in favor of the City.

**B. Count II: § 1983 (Defendant Detectives)**

Plaintiff also brings suit against Defendant Detectives under § 1983, arguing that they violated Saucedo's Fourth Amendment constitutional rights by failing to exercise reasonable care for Saucedo's medical needs and safety. When applying the Fourth Amendment's "objectively unreasonable" standard to claims brought by arrestees who have not yet had a probable cause hearing, the Seventh Circuit distinguishes between whether the claims relate to an officer's conduct regarding an arrestee's (1) medical care or (2) general conditions of confinement. *See Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir.2013). Common sense is particularly appropriate for determining whether an officer's act or omission is objectively unreasonable. *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir.2006) (citing *United States v. Sharpe*, 470 U.S. 675 (1985)).

7

**1. Medical Care claim**

Plaintiff claims that Defendant Detectives violated Saucedo's Fourth Amendment rights by failing to provide adequate medical care to Saucedo for his medical need, *i.e.* Saucedo's suicidal ideations. When determining whether an officer's response to an arrestee's medical need was objectively unreasonable, courts may look to four factors: (1) notice of arrestee's medical need; (2) the seriousness of the medical need; (3) the nature or scope of the requested treatment; and (4) the police interests involved. *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 600 (7th Cir. 2011) (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir.2007)).[1] Without notice of Saucedo's suicidal ideations, Plaintiff cannot show that Defendant Detectives' conduct was objectively unreasonable in failing to respond to Saucedo's medical need. *See Buford v. City of Chicago, Ill.*, 2009 WL 4639747, at *3 (N.D. Ill. Dec. 3, 2009) ("officers must receive some form of notice of suicide risk before their failure to prevent an arrestee's suicide can be considered objectively unreasonable"). Courts thus look to whether an officer had "notice of the arrestee's medical need […] whether by word […] or through observation of the arrestee's physical symptoms." *Florek* 649 F.3d at 600 (quoting *Williams*, 509 F.3d at 403).

Plaintiff first argues that Defendant Detectives had notice of Saucedo's suicidal ideations from Saucedo's behaviors and actions, including Saucedo "praying, kneeling, and making the sign of the cross on his chest," which Plaintiff claims suggested Saucedo's passive suicidal tendencies while he was alone in Interview Room A. In addition to this perhaps peculiar behavior, the ERI video also shows Saucedo attempting to choke himself with his shirt and his drawstring. Plaintiff argues that Defendant Detectives' failure to observe Saucedo's actions,

---

[1] The standard to establish that an officer's conduct was "objectively unreasonable under the circumstances" requires a lower showing on a plaintiff's part than is necessary to prove an officer's deliberate indifference under the Eighth and Fourteenth Amendments. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

either by monitoring the video or in person, which overtly indicated his suicidal ideations, was objectively unreasonable. Objective reasonableness is not, however, measured by whether an officer *should* have had notice of a medical condition, but whether an officer having *actual* notice of an arrestee's medical condition acted reasonably. *See, e.g., Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 503 (7th Cir.2010) ("the focus here is on the reasonableness of the officers' response once they realized [the detainee] was unconscious"). While Defendant Detectives undoubtedly would have had notice of Saucedo's suicidal ideations through his actions had they observed the ERI video, Plaintiff has failed to provide evidence that Defendant Detectives did actually observe these suicidal ideations before Saucedo's death.

Plaintiff additionally argues that Defendant Detectives had actual notice of Saucedo's suicidal ideations by word when Saucedo requested pen and paper "to write his mother and tell her that he loved her." It is undisputed that neither Saucedo nor his family ever told Defendant Detectives that he was suicidal or that he needed medical attention. Nonetheless, knowledge can be inferred from circumstantial evidence and does not rest on the plaintiff's self-reported need or lack of need for medical treatment. *Paine v. Johnson*, 689 F. Supp. 2d 1027, 1066 (N.D. Ill. 2010), *aff'd in part, rev'd in part sub nom. Paine v. Cason*, 678 F.3d 500 (7th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (May 17, 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). In *Paine*, the court found that a material question of fact existed regarding whether the officers were put on notice of decedent's mental health condition requiring medical attention after knowing that fellow officers were concerned about decedent and personally observing decedent's bizarre behavior throughout the day and during the decedent's interview.

Here, Defendant Detectives concede that Saucedo told them to tell his mother and brother that "I love them and that I'll see them," but dispute that Saucedo indicated why he wanted pen and paper. Even considered in the light most favorable to Plaintiff, Saucedo's request for pen and paper to write his family is not sufficient to raise an inference that Defendant Detectives knew that Saucedo had suicidal ideations and requested paper to write a suicide note. There is no material question of fact that Defendant Detectives did not have notice by word of Saucedo's suicidal ideations or a mental health condition requiring medical care.

Plaintiff also contends that Defendant Detectives had or should have had notice of Saucedo's medical need due to the foreseeability and known risk of suicide by incarcerated people, citing dicta that inmates are "nine times as likely" to commit suicide than free persons. *See Jutzi–Johnson v. United States*, 263 F.3d 753, 757 (7th Cir. 2001). Plaintiff's theory creates a presumption that officers are automatically placed on notice of an arrestee's risk of suicide simply because of the arrestee's status as an incarcerated person, whether or not the arrestee actually has suicidal ideations. This presumption clearly does not exist, as this Court has previously found that officers lacked notice of a suicide risk of a detained person even where that detained person's suicide actually occurred. *See, e.g., Buford*, 2009 WL 4639747; *Hayes v. City of Des Plaines*, 182 F.R.D. 546 (N.D. Ill. 1998).

The Fourth Amendment's standard is objective, and no jury could conclude that the information known to Defendant Detectives at the time of either Saucedo's detainment or subsequent suicide provided them notice of Saucedo's suicidal ideations or mental health issues such that reasonable officers should have provided him care for his medical need. *Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007); *Buford v. City of Chicago, Ill.*, 2009 WL 4639747, at *3 (N.D. Ill. Dec. 3, 2009) ("officers must receive some form of notice of suicide

risk before their failure to prevent an arrestee's suicide can be considered objectively unreasonable"). Defendant Detectives' motion for summary judgment is granted on Plaintiff's claim that Defendant Detectives violated Saucedo's Fourth Amendment rights by failing to provide Saucedo adequate medical care for his medical need.

### 2. Conditions of Confinement claims

A detainee challenging the constitutionality of the conditions in which he was confined under the Fourth Amendment need only show that "the totality of the defendant's conduct in detaining the arrestee was 'objectively unreasonable' under the circumstances." *Flores v. Lackage*, 938 F. Supp. 2d 759, 775 (N.D. Ill. 2013); *Williams*, 509 F.3d at 403. In assessing the totality of a defendant's conduct, courts consider several factors, including the duration of confinement, the nature and seriousness of the alleged constitutional violation, and the police rationale for the alleged deprivation of an arrestee's rights. *Id.*; *see also Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006) (analyzing evidence that arrestee was deprived food, drink, and sleep, and was shackled to a wall and forced to yell for an extended period of time before being permitted to use the bathroom). In evaluating whether detention is unreasonable, common sense and ordinary human experience, rather than a 'bright line' rule or rigid criteria, govern. *Lopez*, 464 F.3d at 720 (citing *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).

Detective Gomez was responsible for Saucedo's health and safety at all times that Saucedo was in custody. He was trained to provide for a detainee's health and safety by following certain rules: "Make sure you search him. Make sure he doesn't have anything on him that's going to hurt himself and others. Physical observation of the individual. Basically, that's it." Deposition of Det. Jose Gomez, pp. 81, 83. Plaintiff argues that Defendant Detectives

11

violated Saucedo's Fourth Amendment rights by failing to (1) exercise reasonable care for Saucedo's safety; (2) monitor Saucedo while he was detained; (3) adequately search Saucedo when escorting him in and out of the interrogation room; (4) remove all harmful items from Saucedo's person and room; (5) restrain or handcuff Saucedo when left alone in the interview room; and (6) adequately provide Saucedo with conditions of confinement that did not pose a serious risk of harm.

It is undisputed that Saucedo was not handcuffed or restrained while in the interview room and that Defendant Detectives did not remove Saucedo's waistband drawstring. Parties dispute whether the adequacy and frequency of the searching, supervision, and monitoring was reasonable. Defendant Detectives argue that they had a "legitimate investigatory interest" in deciding not to handcuff or restrain Saucedo, and they assert that their searches were adequate, despite being unsuccessful in locating Saucedo's waistband drawstring. Defendant Detectives further argue that their conduct was not unconstitutional because they lacked notice of Saucedo's suicidal ideations. However, unlike a Fourth Amendment claim for inadequate medical care, a finding of objectively unreasonable conditions of confinement does not require that a defendant had notice of the detainee's medical need. Rather, such notice is merely one, non-conclusive factor considered amongst several other factors in evaluating whether the totality of the confinement conditions were reasonable.

Defendant Detectives' also failed to adhere to the State of Illinois Municipal Jail and Lockup Standards requiring "[a] visual check by personal inspection of each person confined …at least once every 30 minutes." 20 ILAC § 720.60. While Plaintiff contends that there exists a question of material fact as to whether noncompliance with said standards constitutes a constitutional violation, failure to comply with police rules, practices, and regulations have been

found to be "an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct" because "[they] vary from place to place and from time to time." *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir.2006) (holding conformity with police department's internal orders was irrelevant to the jury's determination of whether the officer's actions were "objectively reasonable" under the Fourth Amendment). While an internal standard may illustrate a custom of officers to undertake certain obligations for the safety and welfare of prisoners, the reasonableness of an officer's conduct must be evaluated under a particular set of facts and circumstances. *Id.*; *Dezort v. Village of Hinsdale*, 342 Ill.App.3d 703, 708 (1976) (citing *Darling v. Charleston Hosp.*, 211 N.E.2d 253 (1965).

Even without considering Defendant Detectives' noncompliance with the Lockup Standards, a reasonable jury exercising common sense could weigh the totality of the evidence and conclude that failing to restrain and monitor a detainee for over an hour after charging him with murder, despite ready access to handcuffs and surveillance video, is objectively unreasonable. Because a trier of fact could conclude that Defendant Detectives' conduct was objectively unreasonable, there exists a material issue of fact as to whether Saucedo's Fourth Amendment rights regarding his conditions of confinement were violated.

### 3. Qualified Immunity

Defendant Detectives argue that, as government officials, they are shielded from any potential civil liability stemming from their conduct relating to Saucedo's § 1983 claims because they are entitled to qualified immunity. Qualified immunity shields a government official from civil liability unless his conduct violates a clearly established constitutional right of which a reasonable person would have known at the time the alleged violation occurred. *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir.2012). Qualified immunity is determined by a two-part test:

"(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* (quoting *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir.2012). This Court has discretion in determining "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Smith v. Hunt*, 2010 WL 3842374, at *13 (N.D. Ill. Sept. 27, 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Because Plaintiff has established a genuine question of material fact as to whether Defendant Detectives violated Saucedo's Fourth Amendment rights regarding his conditions of confinement, the Court turns to the second prong of the analysis to determine whether Saucedo's Fourth Amendment right to be confined under reasonable conditions was clearly established at the time of Defendant Detectives' alleged misconduct.[2]

Plaintiff has the burden of showing that a right was clearly established, that is to say, that the contours of the right are "sufficiently clear that a reasonable official would understand what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir.2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Plaintiff may satisfy the burden of showing that a right was clearly established by presenting either (1) a closely analogous case establishing the unconstitutionality of Defendants' conduct, or (2) evidence that Defendants' conduct was "so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Id.* at 779-80.

In assessing whether a case is analogous, "[t]he salient question is not whether there is a prior case on all fours with the current claim but whether the state of the law at the relevant time gave the defendants fair warning that their treatment of the plaintiff was unconstitutional."

---

[2] Because Defendant Detectives lacked notice of Saucedo's suicide risk, they face no liability for violating Saucedo's constitutional right to medical care. Thus, qualified immunity need not be analyzed as to Plaintiff's claim for inadequate medical care.

*McGreal v. Ostrov*, 368 F.3d 657, 683 (7th Cir.2004); *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (citing *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002)). Before liability will attach, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)(citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir.2000)).

Here, Plaintiff fails to present any legal basis for finding that an officer, without notice of an arrestee's suicidal risk, violates an arrestee's constitutional rights through the types of searches, supervision, and restraint that Defendant Detectives employed. At most, Plaintiff presents cases in which a question of fact existed regarding whether an officer had notice of medical need[3] or where conditions of confinement existed that were distinguishable from the present conditions and treatment.[4] These cases discuss conduct involving deprivation of food, drink, and sleep, prolonged shackling, inattention to bathroom needs, and length of detainment. These cases would not have given Defendant Detectives fair warning that failing to adequately search, supervise, and restrain Saucedo, without notice of his suicide risk, was unconstitutional.

Plaintiff argues that, even without analogous case law, Defendant Detectives' conduct was "so patently violative" of Saucedo's clearly established right under the Fourth Amendment to lawful conditions of confinement that a reasonable officer would have known such conduct to be unconstitutional. *See Bonds v. Fizer*, 713 F. Supp. 2d 752, 765 (N.D. Ill. 2010). To determine

---

[3] *See Williams*, 509 F.3d 392 (finding officer was not deliberately indifferent to asthmatic arrestee's medical need); *Cavalieri*, 321 F.3d 616 (finding that issue of fact existed whether officer was aware of detainee's suicide risk); *Hayes*, 182 F.R.D. 546, 551 (stating that, without actual knowledge of suicide risk, officers were not reckless leaving detainee unattended in a room with a pay phone that detainee ultimately used to commit suicide).

[4] *See Lopez*, 464 F.3d at 720 (considering evidence that arrestee "was deprived of food, drink, and sleep during the four days and nights he spent shackled to the wall of the interrogation room, and was forced to yell for an extended period of time before being let out to use the bathroom"); *United States v. Sharpe*, 470 U.S. 675 (U.S.S.C. 1985) (finding that a 20 minute detainment is not unreasonable).

whether conduct obviously violates an established constitutional right, courts must assess that conduct "in light of the specific context of the case, not as a broad general proposition." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003)(citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (U.S., 2001)); *Florek*, 649 F.3d at 598; *Flores*, 938 F. Supp. 2d at 772. Plaintiff has failed to show that the right to be detained in lawful conditions is sufficiently clear that a reasonable official would understand that leaving a detainee unrestrained and unmonitored for over an hour after charging him with murder was unlawful. While Defendant Detectives would undoubtedly have been prudent to have conducted a more thorough search, restrained Saucedo, and engaged in recommended half-hourly personal inspections of Saucedo, the conduct undertaken by Defendant Detectives is not clearly in violation of the Fourth Amendment right to reasonable conditions of confinement.

Because Plaintiff failed to show that Defendant Detectives violated an established constitutional right, Defendant Detectives are entitled to qualified immunity and their motion for summary judgment is granted as to Count II in its entirety.

**C. Count III: Wrongful Death – Negligence (All Defendants)**

Plaintiff, as family members of Saucedo, brings a claim against Defendants under the Illinois Wrongful Death Act for negligently causing the death of Saucedo. Under the Illinois Wrongful Death Act, Plaintiff must demonstrate Defendants' negligence by establishing that "(1) Defendants owed a duty to decedent Saucedo; (2) Defendants breached that duty; (3) the breach of duty proximately caused decedent Saucedo's death," and (4) pecuniary damages arose from this breach to persons designated by the Act. *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir.2006) (quoting *Leavitt v. Farwell Tower Ltd. P'ship*, 252 Ill.App.3d 260 (1993)); 740 Ill. Comp. Stat. Ann. 180/1.

Even *assuming arguendo* that Defendants owed Saucedo a duty that it breached, such a breach did not proximately cause Saucedo's death by suicide. Under Illinois law, suicide is considered an intervening event that breaks the causal chain between a tortious act and the injury unless (1) "the defendant's conduct caused an injury, most often to the head, that made the decedent 'so bereft of reason' as to cause him to attempt suicide," or (2) where a patient has committed suicide under the custody or control of a psychiatric caregiver who failed to properly supervise the decedent. *Dux v. United States*, 2014 WL 4748693, at *4 (N.D. Ill. Sept. 24, 2014) (quoting *Johnson v. Wal-Mart Stores, Inc.*, 588 F.3d 439, 442 (7th Cir.2009)); *see also Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 158–59 (Ill., 1965), ("The universal rule followed by most jurisdictions is that the victim's act of suicide is a new and independent agency breaking the chain of causation from the negligent act and is not reasonably foreseeable."). A wrongful death claim arising from a suicide will fail as a matter of law unless the plaintiff can satisfy one of these exceptions. *Dux*, 2014 WL 4748693 at *5.

Here, there is no dispute that the second exception does not apply, as Saucedo was not under the control of a psychiatric caregiver. Rather, Plaintiff contends that Saucedo's suicide falls under the first exception. Plaintiff argues that Saucedo was "bereft of reason" when he committed suicide, which was caused by "Defendant Detectives' deficient conduct of allowing Saucedo to remain unassisted while experiencing suicidal ideations replacing all sound judgment and logic." Plaintiff does not, however, provide any evidence to support that Saucedo acted under insanity or "in a state of a frenzy or delirium" resulting in Saucedo being "so bereft of reason as to commit suicide." To the contrary, the record shows Saucedo was cool, calm, and collected during the duration of his confinement, that he strategically tried to conceal his drawstring, test the drawstring on the doorframe, and hang himself, all in a manner conscious of

17

the officers' presence. The reasonable inference drawn from the evidence is not that Defendant Detectives' failure to appreciate Saucedo's suicidal risk caused Saucedo to commit suicide, but rather that Saucedo committed suicide because his concerns about separation and imprisonment—factors inherent to his being a murder suspect—became unbearable to him. *See Jutzi-Johnson* 263 F.3d at 757 (7th Cir.2001) (finding no causal relation between a jail staff's negligence in failing to discover decedent inmate's nervous behaviors and suicide resulting from concerns about circumstances inherent to decedent inmate's situation, which jail staff could not have done anything to alleviate).

Neither exception applies to Illinois' general rule that a negligent actor's decision to commit suicide is an intervening act for which a defendant is not liable; therefore, Plaintiff has failed to establish that Defendants were the proximate cause of Saucedo's death. Summary judgment is granted in favor of Defendant Detectives, as well as Defendant City of Chicago, which is immune from liability "for an injury resulting from an act or omission of its employee where the employee is not liable." 745 Ill. Comp. Stat. Ann. 10/2-109.

**D. Count IV: Survival Act – Negligence (All Defendants)**

**1. Illinois Survival Act**

The Illinois Survival Act does not create a statutory cause of action, but instead allows Plaintiff to bring a statutory or common-law action that accrued prior to Saucedo's death, over which Saucedo would have been able to prosecute and recover damages for pain and suffering sustained before his death. *Readel v. Vital Signs, Inc.*, 2002 WL 1359417, at *2 (N.D. Ill. June 21, 2002). Plaintiff, as Saucedo's representative, brings a common law tort action for negligence under the Illinois Survival Act to recover damages to which Saucedo would have been entitled as a result of Defendants' conduct. A negligence cause of action requires that there must be a legal

duty to exercise care in favor of the person injured, a breach of such duty, and injury proximately caused by such breach. *Advincula v. United Blood Servs.*, 176 Ill. 2d 1, 12 (1996). In a personal injury action arising out of negligence, the cause of action accrues at the time of the injury. *Fetzer v. Wood*, 211 Ill. App. 3d 70, 78 (1991).

Defendant Detectives owed Saucedo a duty to exercise ordinary and reasonable care for the preservation of his health and life under the circumstances of his particular detainment. *See Delasky v. Vill. of Hinsdale*, 109 Ill. App. 3d 976, 980 (1982). Plaintiff argues that Defendants breached that duty of care because they failed to (1) monitor Saucedo; (2) remove harmful items from Saucedo's person and interrogation room; (3) appreciate signs of danger; and (4) adequately train officers to provide safety for Saucedo. Under the circumstances of this particular case, whether Defendant Detectives breached their duty to exercise reasonable care over Saucedo's health and life is a question of fact to be determined by a jury.

However, even *assuming arguendo* that Defendant Detectives' conduct was a breach of their duty to Saucedo, Plaintiff is only entitled to recover for such conduct that was the proximate cause of Saucedo's "conscious pain and suffering prior to and causing his death." Although Illinois law does not require precise evidence such as medical testimony to establish conscious pain and suffering, at the summary judgment stage, Plaintiff must present affirmative evidence that there was reasonable certainty that Defendant Detectives' negligence proximately caused Saucedo's injuries. *Bryant v. Chicago Hous. Auth.*, 2015 IL App (1st) 122775-U, ¶ 14 (citing *Hussung v. Patel,* 369 Ill.App.3d 924, 931, 308 Ill.Dec. 347, 861 N.E.2d 678 (2007)); *Kasongo v. U.S.*, 523 F. Supp. 2d 759, 810 (N.D. Ill. 2007); *Kimbrough v. Jewel Companies, Inc.,* 92 Ill.App.3d 813, 817, 48 Ill.Dec. 297, 416 N.E.2d 328 (1981). Plaintiff does not provide great detail of Saucedo's alleged injuries of conscious pain and suffering prior to and causing his

death and, instead, relies on lay testimony describing Saucedo's actions before his death, coupled with evidence concerning his injuries to support a claim for recovery before a jury. While Saucedo undoubtedly suffered from emotional and mental stress prior to his death that led him to decide to commit suicide, this suffering is reasonably understood as the result of being investigated and detained in relation to a murder, rather than caused by Defendant Detectives' failure to adequately monitor and protect Saucedo. As Plaintiff has failed to establish the required elements of a negligence claim (i.e., proximate cause), summary judgment is granted in favor of Defendant Detectives as to Count IV under the Illinois Survival Act.

**2. Illinois Tort Law Immunity**

Because Plaintiff has failed to establish liability under a negligence claim, I need not address Defendants' arguments regarding entitlement to immunity from liability under § 2-202 or § 4-103 of the Illinois Tort Immunity Act. 745 ILCS 10/2-202; 745 ILCS 10/4-103.

For the foregoing reasons, summary judgment is granted to Defendants as to Plaintiff's Count IV claims relating to (1) failure to monitor Saucedo and (2) failure to remove potentially harmful items from Saucedo's interrogation room. Defendants' motion for summary judgment is denied as to the remaining claims of Count IV.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to all claims of Counts I, II, and III in its entirety, and Count IV in part.

ENTER:

James B. Zagel
United States District Judge

DATE: June 11, 2015